[Cite as *Henderson v. Scott*, 2026-Ohio-1808.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| YOLANDA HENDERSON, | **CASE NO. 2025-T-0078** |
| Petitioner-Appellee, | |
| - vs - | Civil Appeal from the Court of Common Pleas |
| MAUREEN SCOTT, | |
| Respondent-Appellant. | Trial Court No. 2025 CV 02295 |

## MEMORANDUM OPINION AND JUDGMENT ENTRY

Decided: May 18, 2026
Judgment: Appeal dismissed

*Yolanda Henderson*, pro se, 1753 Southwest Boulevard, S.W., Warren, OH 44485 (Petitioner-Appellee).

*Maureen Scott*, pro se, 1581 Pin Oak Lane, S.E., Conyers, GA 30094 (Respondent-Appellant).

ROBERT J. PATTON, J.

{¶1} Respondent-appellant, Maureen Scott Richardson ("Scott"), appeals from the judgment of the Trumbull County Court of Common Pleas, granting a Civil Stalking Protection Order ("CSPO") filed by petitioner-appellee, Yolanda Henderson ("Henderson").[1] On appeal, Scott contends that the trial court's decision is contrary to law because there was no evidence presented that a second incident occurred as required by law. For the following reasons, we dismiss the appeal.

---

1. Scott has signed her pleadings in this court as Maureen Scott Richardson. She was identified as Maureen Scott in the court below. For clarity purposes, this court will refer to appellant as Scott.

{¶2} Upon review, we conclude that Scott failed to file objections to the magistrate's decision as required by Civ.R. 65.1(G). Based on this court's precedent, followed by the majority of Ohio Appellate Districts, we cannot consider the merits of this appeal and must dismiss the appeal. *See DeJanovic v. Kashat*, 2025-Ohio-5865, ¶ 10 (11th Dist.).

{¶3} Accordingly, this appeal is dismissed pursuant to Civ.R. 65.1(G).

## Substantive and Procedural Facts

{¶4} On September 18, 2025, Henderson filed a Petition for Civil Stalking Protection Order pursuant to R.C. 2903.214. The petition alleged that six days prior, on September 12, 2025, Henderson and Scott argued after mulch was removed from Alesia Scott's ("Alesia") property. The mulch belonged to Henderson's daughter, Starsha Henderson ("Starsha"). According to the petition, Scott threatened Henderson and Starsha with a firearm in front of two of Henderson's grandchildren. The petition also indicated that Scott resides out of state, and Henderson does not know when Scott may come into town.

{¶5} An ex parte hearing on the petition was held before a magistrate on September 18, 2025. The magistrate determined that the petition failed to establish good cause for the issuance of an ex parte order and denied the request. A full hearing was scheduled for September 29, 2025.

{¶6} On September 29, 2025, the court called the underlying case with several related cases: *Alesia Scott v. Sharsha Henderson*, Case No. 2025-CV-2266; *Alesia Scott v. Yolanda Henderson*, Case No. 2022-CV-2267; *Starsha Henderson v. Alesia Scott*, Case No. 2025-CV-2268; *Yalonda Henderson v. Alesia Scott*, Case No. 2025-CV-2994.

{¶7}     At the full hearing, the following testimony was presented:

{¶8}     Alesia testified that she resides next door to Starsha's residence. Alesia described ongoing issues between her and Starsha. Alesia testified that a basketball would hit her window and end up in her yard. Alesia stated that children had climbed over her fence to retrieve the basketball on numerous occasions. Alesia also testified that due to the basketball hitting her window and the children climbing over the fence, her property had been damaged.

{¶9}     Alesia testified that she tried to talk with Starsha, but Henderson circled behind her and "came to fight." Alesia told Henderson that she was going to call the police and told them to get off her property.

{¶10}    Alesia also described issues with Starsha when the lawn service would come to cut Alesia's grass. Alesia testified that she maintains her grass on both sides of the fence. On one occasion, Alesia testified that the lawn service came to cut her grass and discovered no trespassing signs on the fence. Alesia testified that she removed the signs and placed them on top of Starsha's garbage can. According to Alesia, two days later, she heard Henderson say, "Messin' with my daughter's property" and "just cursing."

{¶11}    Alesia further testified that Starsha put mulch on her property and that "[i]t got so bad" that she had to "call the zoning man." According to Alesia, the "zoning man" checked the marker in the grass and told Starsha the mulch needed to be moved off Alesia's property. Alesia testified that Starsha said she would remove it. However, after three months, the mulch remained on Alesia's property. Alesia testified that the mulch was still on her property when she went to Georgia with her sister, Scott.

Case No. 2025-T-0078

{¶12} Scott testified that she resides in Georgia and holds a professional nursing license in Ohio and Georgia. She informed the magistrate at the hearing that she spends maybe three or four months at a time in Ohio. According to Alesia, she and Scott were in Georgia for approximately two months.

{¶13} Scott testified that Alesia was deemed disabled and that she helps to take care of her. According to Scott and Alesia, when they returned from Georgia, the mulch was still there.

{¶14} Two days after arriving from Georgia, Scott told Alesia that she was going to remove the mulch. Scott testified that she did not go on Starsha's property and stayed in line with the mulch during the removal. Scott testified that she used the garbage bags underneath the mulch to roll the mulch up. When Scott was nearly finished with the mulch removal, Betty Primm ("Primm") pulled into Starsha's driveway. Alesia and Scott testified that the women greeted each other, hugged, and exchanged pleasantries. Primm testified that she spoke to Alesia who told her they were pulling up mulch because the mulch was old.[2] Alesia stated that Primm pulled out of the driveway but then returned. According to Alesia, Primm told her she needed to use the bathroom. Afterwards, Primm left.

{¶15} Alesia testified that approximately three minutes later, Starsha and Henderson arrived in a car with two kids in the back. According to Alesia, the car came "recklessly up the driveway" nearly striking Scott and colliding with two garbage cans that were in front of Alesia. Alesia stated that Henderson and Starsha were "cussin' and loud" and started "kind of coming around" her. According to Alesia, Henderson took mulch out of the garbage can and threw it at Scott. Alesia also stated that Henderson asked if they

---

2. Primm was not present during the subsequent confrontation between Henderson, Starsha, Alesia and Scott.

Case No. 2025-T-0078

wanted to fight. Alesia testified that Scott grabbed her hand and told Henderson she was "not a fighter" and that they would "handle this the legal way." During the incident, Alesia testified that Starsha had dumped all the mulch that had been cleaned up, out in the same spot on Alesia's property. Alesia stated that when she told Henderson and Starsha that she was going to call the police, someone in Henderson's group said, "[w]e have already called the police." Alesia testified that she found that to be odd because the group had arrived in the driveway and confronted them. Alesia stated that no one had called any police at that point.

{¶16} Alesia testified that she and Scott went into her home and were in the process of calling the police when law enforcement officers arrived. Scott testified that she "immediately thought that some neighbors saw everything and that they called the police. So [she] came to the door, not thinking anything of [the] gun. . .so [she] came to the door happy to see the police." According to Alesia and Scott, law enforcement officers began inquiring about Scott's firearm. Alesia and Scott both testified that Scott did not pull her firearm, and that the firearm was in Scott's pocket for the duration of the confrontation. Scott informed the magistrate that the police initially took her firearm but later returned it.

{¶17} Henderson testified and admitted that the basketball did go over the fence. According to Henderson, eventually Alesia did not return the ball to the kids and kept the basketball "for almost a year." According to Henderson, a neighbor had told Starsha that Alesia was going to call Children's Services. Henderson suggested that this was "where everything began to escalate."

{¶18} Henderson then testified that on September 12, 2025, the day of the mulch incident, Scott pulled her gun and "was trying to stop Alesia from going in the house to

retrieve her gun." Henderson admitted to calling the police "[b]ecause we already knew where this was going." Henderson further testified she "[n]ever had a problem with [Scott]. But with [Alesia]. And [Alesia]'s always . . . nitpicking." Henderson also alleged that Alesia offered an unidentified third-party money "to beat [Starsha] up."

{¶19} Starsha was also present for the full hearing. At the hearing, Starsha testified that she had just finished a 12-hour shift and was tired. Starsha informed the magistrate that Alesia had placed cameras around her property and that one was directed at Starsha's house. Starsha then asked to leave. After indicating she had nothing additional to offer to the court, the magistrate permitted Starsha to leave.

{¶20} After a hearing, the magistrate took the matter under advisement. The magistrate later granted the CSPO pursuant to R.C. 2903.214 and made the following findings of fact: "[Scott] engaged in multiple instances of harassing behavior causing [Henderson] to fear for her safety." The trial court also found "by a preponderance of the evidence that 1) [Scott] has knowingly engaged in a pattern of conduct that caused [Henderson] to believe that [Scott] will cause physical harm or cause or has caused mental distress; and 2) the following orders are equitable, fair, and necessary to protect the persons named in this Order from stalking offenses."[3] The decision and judgment entry adopting the magistrate's decision were filed on October 2, 2025 in a single document.

{¶21} According to the trial court docket, Scott did not file objections in the court below. Instead, she filed a notice of appeal from the entry granting Henderson's petition for a CSPO.

---

3. The CSPO is effective from September 29, 2025, until September 29, 2026.

Case No. 2025-T-0078

**The Appeal**

{¶22} Scott raises a single assignment of error for review: "The trial court erred as a matter of law in granting a Civil Stalking Protection Order because no evidence established a 'pattern of conduct' as required by R.C. 2903.214 and R.C. 2903.211."

{¶23} Scott contends that the trial court's issuance of a CSPO was contrary to law because "only a single confrontation on September 12, 2025 has been established, which Henderson herself initiated . . . Henderson admitted there was no prior history, no prior contact, and no prior incidents involving [Scott]."

{¶24} A CSPO pursuant to R.C. 2903.214 is one of the special statutory proceedings governed by Civ.R. 65.1. A court is permitted to refer a proceeding under R.C. 2903.214 to a magistrate. The magistrate has the authority to hold an ex parte and full hearing on the petition for a protection order and thereafter make a ruling denying or granting the protection order. Civ.R. 65.1(F)(2) and (3). However, a magistrate's decision on a petition for a protection order is not effective unless adopted by the trial court. Civ.R. 65.1(F)(3)(c)(i).

{¶25} Pursuant to Civ.R. 65.1.(F)(3)(d)(i), "a party may file any written objections to a court's adoption . . . of a magistrate's . . . granting of a protection order after a full hearing . . . within fourteen days of the court's filing of the order." However, Civ.R. 65.1 was amended in 2016 which requires a party to timely file objections *prior* to filing an appeal. *Post v. Leopardi*, 2020-Ohio-2890, ¶ 11 (11th Dist.) citing Civ.R. 65.1(G). The 2016 Staff Note regarding Civ.R. 65.1(G) explains: "[t]his amendment is grounded on two key principles. First, it promotes the fair administration of justice, including affording the trial court an opportunity to review the transcript and address any insufficiency of evidence

or abuse of discretion that would render the order or a term of the order unjust. Second, it creates a more robust record upon which the appeal may proceed." *Post* at ¶ 13, citing 2016 Staff Note, Civ.R. 65.1(G).

{¶26} It is apparent, after a review of the docket in the underlying case, that Scott failed to file objections to the magistrate's decision as required by Civ.R. 65.1(G). According to this court's precedent, we conclude that Scott may not challenge the trial court's judgment on appeal without timely filing objections as required by Civ.R. 65.1(G). *Post* at ¶ 25; *Younker v. Mook*, 2022-Ohio-3699, ¶ 11 (11th Dist.); *DeJanovic*, 2025-Ohio-5865, at ¶ 9 (11th Dist.). An appeal must be dismissed if a party attempts to appeal the trial court's judgment without first filing objections. *DeJanovic at* ¶ 9, citing *Younker* at ¶ 15 and *Post* at ¶ 25. Accordingly, we decline to address the merits, and the appeal is dismissed.

## Conclusion

{¶27} For the reasons set forth above, this appeal is dismissed.

MATT LYNCH, P.J.,

JOHN J. EKLUND, J.,

concur.

Case No. 2025-T-0078

## JUDGMENT ENTRY

For the reasons stated in the memorandum opinion of this court, it is ordered that the appeal is hereby dismissed.

Costs to be taxed against appellant.

_____
JUDGE ROBERT J. PATTON

_____
PRESIDING JUDGE MATT LYNCH,
concurs

_____
JUDGE JOHN J. EKLUND,
concurs

| **THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY** |
|---|
| A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure. |

Case No. 2025-T-0078